IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LEXIE M. ROLAND                                                                                    PLAINTIFF

v.                                           No. 4:14–CV–022-DPM–BD

CAROLYN W. COLVIN, Acting Commissioner,
Social Security Administration                                                             DEFENDANT

## RECOMMENDED DISPOSITION

### Instructions

The following recommended disposition was prepared for U.S. District Judge D.P. Marshall Jr.  A party to this dispute may file written objections to this recommendation.  An objection must be specific and state the factual and/or legal basis for the objection.  An objection to a factual finding must identify the finding and the evidence supporting the objection.  Objections must be filed with the clerk of the court no later than 14 days from the date of this recommendation.[1]  The objecting party must serve the opposing party with a copy of an objection.  Failing to object within 14 days waives the right to appeal questions of fact.[2]  If no objections are filed, Judge Marshall may adopt the recommended disposition without independently reviewing all of the record evidence.

---

[1] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2] *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections waives right to de novo review and to appeal magistrate judge's findings of fact).

**Reasoning for Recommended Disposition**

Lexie Michelle Roland seeks judicial review of the denial of her application for supplemental security income (SSI).³ Ms. Roland last worked as a Sprint sales representative.⁴ She worked at a store in Russellville, Arkansas, until September 2010, when the store closed; she transferred to a store in Little Rock, but was terminated in October 2010 for absenteeism.⁵ A few months later, Ms. Roland separated from her husband⁶ and applied for SSI. She based disability on depression, anxiety, fibromyalgia, headaches, hives, post traumatic stress disorder (PTSD), and cancer.⁷

**The Commissioner's decision**. After considering the application, the Commissioner's ALJ determined that Ms. Roland had severe impairments — anxiety, depression, and PTSD⁸ — but that she could do work at all exertional levels with non-

---

³SSA record at p. 151 (alleging disability beginning Oct. 16, 2010).

⁴*Id*. at pp. 58-60, 189 & 205.

⁵*Id*. at p. 60. *But see id*. at p. 313 (reporting that she stopped working in Oct. 2010 when the store closed).

⁶*Id*. at p. 294 (reporting four-month separation) & p. 306 (separated from husband since Feb. 2011).

⁷*Id*. at p. 188.

⁸*Id*. at p. 36.

exertional limitations.[9] Because a vocational expert identified available work,[10] the ALJ determined that Ms. Roland was not disabled and denied the application.[11]

After the Commissioner's Appeals Council denied a request for review,[12] the decision became a final decision for judicial review.[13] Ms. Roland filed this case to challenge the decision.[14] In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[15]

---

[9]*Id*. at p. 38 (requiring work with incidental interpersonal contact, tasks learned and performed by rote, little required judgment, and simple, direct, concrete supervision).

[10]*Id*. at p. 88 (identifying machine packager, industrial cleaner, and hand packer as available work).

[11]*Id*. at pp. 42-43.

[12]*Id*. at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]Docket entry # 1.

[15]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

This recommendation explains why substantial evidence supports the decision and why the ALJ made no legal error.

**Ms. Roland's allegations**. Ms. Roland initially claimed that chronic pain, fatigue, depression, and anxiety prevented her from working.[16] She relied on severe mental problems developed during childhood.[17] For this review, she abandoned allegations of physical impairment — there is no medical evidence of physical impairment — and instead complains about the evaluation of her credibility and mental impairment.[18] She argues that the ALJ erred by considering drug use in evaluating credibility and by failing to discuss her witness's testimony. She maintains that the ALJ should have identified borderline personality disorder and psychotic disorder as severe mental impairments. For these reasons, she says, substantial evidence does not support the ALJ's decision.

---

[16]*See, e.g.*, SSA record at p. 69 (testifying about anxiety so severe she can't leave the house); p. 213 (stating that anxiety affects her every day, all day); p. 241 (stating that her mental ability is rapidly declining); p. 232 (stating that she spends more time in bed due to anxiety; will not answer the door or telephone); p. 238 (stating that she suffers severe anxiety and depression) & p. 243 (reporting severe anxiety and depression).

[17]*Id*. at p. 65 (testifying about physical, emotional and mental abuse by her mother and at fifteen foster-care placements) & p. 193 (relying on severe mental problems from childhood; reporting placement in DHS custody from age 11 to 18).

[18]Docket entry # 10.

**Applicable legal principles**. For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to support the ALJ's determination about Ms. Roland's ability to work.[19] The ALJ determined that Ms. Roland could work with the following restrictions: (1) incidental interpersonal contact with others, (2) tasks learned and performed by rote, (3) little need for judgment, and (4) simple, direct, concrete supervision.[20] Medical evidence must support this determination; Ms. Roland's allegations are not enough to prove she is disabled.[21] In reviewing for substantial evidence, the court must consider all of the evidence — including evidence detracting from the ALJ's decision[22] — but the court may not reverse simply because substantial evidence supports an opposite conclusion.[23]

---

[19]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[20]SSA record at p. 38.

[21]42 U.S.C. § 423 (d)(5(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which… would lead to a conclusion that the individual is under a disability"); 20 C.F.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. § 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s)….").

[22]*Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004).

[23]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Sultan*, 368 F.3d at 863.

**The medical evidence shows no disabling impairment**. The medical evidence consists of the following:

(1) evidence of mental health treatment at age 12,[24]

(2) a neurological exam at age 23,[25]

(3) a gynecologist's treatment notes at ages 29 to 30, and opinions about Ms. Roland's ability to work,[26]

(4) a mental health intake interview and psychiatric evaluation at age 30,[27]

(5) an agency-ordered mental diagnostic exam at age 30,[28]

(6) an agency-ordered physical exam at age 31,[29]

(7) treatment notes by a family practice doctor and a chiropractor for pain medication at age 31,[30]

(8) agency medical opinions about Ms. Roland's ability to work,[31]

(9) vocational evidence, and

---

[24] SSA record at pp. 420-778 & 790-93.

[25] Id. at pp. 402-05.

[26] Id. at pp. 284-89, 363-65 & 375-78.

[27] Id. at pp. 293-311, 354-61 & 779-88.

[28] Id. at pp. 313-16.

[29] Id. at pp. 341-46.

[30] Id. at pp. 379-401, 407-08 & 793-800.

[31] Id. at pp. 337-38, 350 & 366-67.

(10) an intake interview for court-ordered treatment for drug and alcohol abuse at age 32.[32]

Although the record consists of 800 pages, most of the medical evidence falls outside the time period for which benefits were denied.[33]

The evidence before age 30 has little probative value — other than providing background information — because SSI is not payable before the application date and Ms. Roland applied at age 30.[34] The evidence before age 30 documents placement in foster care at age 12 and mental health treatment for behavioral problems.[35] The evidence shows that a neurologist diagnosed depression and fibromyalgia at age 23.[36] The neurologist advised Ms. Roland to limit the use of muscle relaxers and narcotic pain medications,[37] but Ms. Roland regularly used those drugs. The evidence shows

---

[32]*Id*. at pp. 6-28.

[33]*Roberson v. Astrue*, 481 F.3d 1020, 1026 (8th Cir. 2007) ("Evidence is material if it is 'relevant to claimant's condition for the time period for which benefits were denied.'").

[34]20 C.F.R. § 416.335 (SSI benefits are not payable prior to date of application). *Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (claimant must prove she was disabled as of or subsequent to the protective filing date of application).

[35]SSA record at pp. 420-778 & 790-97.

[36]*Id*. at p. 403.

[37]*Id*. at p. 404.

treatment at age 29, for gynecological issues that were resolved.[38] The notable aspect of the gynecologist's notes is long-term prescription of psychotropic drugs and narcotic pain medication.

The evidence after age 31 has little probative value because it follows the time period for which benefits were denied.[39] The evidence after age 31 shows that Ms. Roland required court-ordered treatment for drug and alcohol abuse.[40] That evidence indicates that Ms. Roland used drugs after the time she said she stopped.

The reasoning for the recommended disposition focuses on the evidence for the time period for which benefits were denied: evidence from ages 30 to 31. That evidence establishes no physical impairment,[41] but supports symptoms of depression, anxiety, and PTSD. Those symptoms support the ALJ's non-exertional limitations. A reasonable mind would accept the evidence as adequate to show Ms. Roland could

---

[38]*Id*. at pp. 284-89 & 363-65.

[39]*Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) ("An implicit requirement is that the new evidence pertain to the time period for which benefits are sought, and that it not concern later-acquired disabilities or subsequent deterioration of a previously non-disabling condition.").

[40]SSA record at pp. 6-28.

[41]The agency physical examiner found no physical limitations. *See* SSA record at pp. 341-46. According to the examiner, Ms. Roland's "primary limitation is psychological related to adolescent trauma — physical exam is essentially [within normal limits]." *Id*. at p. 345.

work within the ALJ's limitations because: (1) Ms. Roland's took psychotropic drugs for depression and anxiety, (2) she sought no treatment for PTSD, and (3) the ALJ's limitations respond to Ms. Roland's symptoms.

**The evidence supports the credibility evaluation**. An ALJ must evaluate credibility before determining the claimant's ability to work.[42] The ALJ may discredit statements about symptoms and limitations based on inconsistencies in the record as a whole.[43] The ALJ used the required two-step process and considered the required factors[44] to evaluate credibility, so the question before the court is whether substantial evidence supports the credibility evaluation.

Ms. Roland argues that the regulations prohibit an ALJ from considering drug use until the ALJ determines the claimant is disabled, but drug use is an appropriate consideration in evaluating credibility if it creates an inconsistency that undermines the claimant's credibility. Ms. Roland's statements about drug use are inconsistent. According to Ms. Roland, she began using marijuana at age 13 and methamphetamine

---

[42]*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[43]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence.").

[44]SSR *96-7p, Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

at age 15. In August 2012, she testified that she hadn't used those substances since age 24,[45] but in July 2011, she told the psychological examiner that she had stopped using one year earlier, that is, at age 29 or 30.[46] These reports create an inconsistency that undermined Ms. Roland's credibility.[47] The ALJ properly considered the inconsistency in discounting Ms. Roland's credibility.

Ms. Roland also complains that the ALJ didn't discuss her witness's testimony, but the witness's testimony has little bearing on the outcome of this case. The witness — a friend who once served as Ms. Roland's foster parent — echoed Ms. Roland's testimony about anxiety. The witness, however, didn't see Ms. Roland every day; he talked to her twice a week.[48] The witness corroborated Ms. Roland's reports about the origins of her drug use. The witness testified that his ex-wife — at that time, Ms. Roland's foster mother — introduced Ms. Roland to marijuana and methamphetamine.[49]

---

[45]SSA record at p. 69.

[46]*Id.* at p. 313.

[47]Ms. Roland presented new evidence indicating she used illegal drugs at age 32; she presented for court-ordered treatment and reported that she planned to quit because she was pregnant. *Id.* at pp. 6-28. *See also id.* at p. 306-07 (she lost custody of daughter due to drug use and DHS involvement; illegal drug use in past 12 months).

[48]*Id.* at pp. 195-96.

[49]*Id.* at p. 81.

While a thorough opinion would explicitly address the witness's testimony, the ALJ's failure to do so doesn't require the court to set aside the decision because the failure has no bearing on the outcome.[50]  The evidence about the origins of Ms. Roland's drug use isn't disputed.  What is disputed is the extent of mental impairment.  The psychiatrist suspected that Ms. Roland's symptoms flowed from substance abuse.[51]  The examining psychologist thought that Ms. Roland was under the influence of an unknown substance.[52]

      Whatever the extent of Ms. Roland's drug use, the ALJ reasonably discounted Ms. Roland's credibility because she pursued no mental health treatment.  Rather than comply with recommended treatment,[53] Ms. Roland obtained psychotropic drugs and narcotics from a gynecologist.  According to the psychiatrist, those drugs had "questionable therapeutic value."[54]  The psychiatrist recommended other psychotropic drugs,[55] but Ms. Roland didn't take them because she didn't like them.[56]  She later

---

[50]*Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992).

[51]SSA record at p. 356.

[52]*Id*. at p. 314.

[53]*Id*. at p. 779.

[54]*Id*. at p. 356.

[55]*Id*. at p. 357.

[56]*Id*. at p. 779.

obtained prescriptions from an out-of-state family practice doctor and a chiropractor. The evidence suggests that substance abuse contributes to Ms. Roland's symptoms.

**There's no confirmed diagnosis of personality disorder or psychosis**.

Ms. Roland insists she had borderline personality disorder and psychotic symptoms, but the medical evidence doesn't support her claim. "Borderline personality disorder [is] characterized by an inability to regulate emotional responses and moods, impacting self-image and interpersonal relationships."[57] Clinicians diagnose the disorder based on patient interviews and a personality assessment and, if permitted, interviews with family and friends.[58] "The clinician should rule out chronic substance abuse and/or medical conditions, especially central nervous system disorders, which can cause similar symptoms."[59]

Ms. Roland's claim flows from an intake interview with a mental health therapist. According to the therapist, Ms. Roland endorsed all criteria for borderline

---

[57]Laith Farid Guilli & Margaret Alic, 1 The Gale Encyclopedia of Mental Health 232 (3d ed.).

[58]*Id.* at p. 235.

[59]*Id.*

personality disorder.[60] The therapist recommended a psychiatric exam because Ms. Roland described hallucinations, implicating psychosis.[61]

The evaluating psychiatrist did not diagnose borderline personality disorder or psychosis; instead, the psychiatrist diagnosed mood disorder, rule out psychotic disorder, and rule out substance abuse induced mood disorder.[62] "'Rule out' … means that the disorder is suspected, but not confirmed—i.e., there is evidence that the criteria for a diagnosis may be met, but more information is needed in order to rule it out."[63] According to the psychiatrist, the primary diagnosis was unclear; Ms. Roland didn't

---

[60]SSA record at p. 305. A therapist is not an acceptable medical source for the purpose of establishing an impairment. *See* 20 C.F.R. § 416.913 (listing sources who can provide medical evidence to establish impairment).

[61]SSA record. at p. 354 (referral based on reported hallucinations). *See id*. at p. 311 (recommending psychiatric evaluation).

[62]*Id*. at p. 356.

[63]*Byes v. Astrue*, 687 F.3d 913, 916 n.3 (8th Cir. 2012).

really have symptoms of hallucinations,[64] a common symptom of borderline personality disorder[65] and a characterizing symptom of psychosis.[66]

The psychological examiner made similar observations. Ms. Roland "appeared to meet the diagnostic criteria" for borderline personality disorder,[67] but the examiner was uncertain whether Ms. Roland's emotional lability flowed from borderline personality disorder or the influence of some substance.[68] Ms. Roland didn't follow through with recommended mental health treatment,[69] so there is no confirmed diagnosis of borderline personality disorder or psychosis. Even if Ms. Roland had borderline personality disorder, she did not show that it prevented her from working within the limits found by the ALJ.

---

[64]SSA record at p. 357.

[65]Laith Farid Guilli & Margaret Alic, 1 The Gale Encyclopedia of Mental Health 235 (3d ed.) (people with borderline personality disorder may experience auditory hallucinations, but are aware that they are hallucinating; 40% of patients report having semi-psychotic thoughts and short delusional periods).

[66]Paula Anne Ford-Martin and Rebecca Frey, 2 The Gale Encyclopedia of Mental Health 1233 (3d ed.) (people with psychosis experience hallucinations and/or delusions they believe are real; psychosis may appear as symptom of mood and personality disorders).

[67]SSA record at p. 315.

[68]*Id*. at p. 314.

[69]*Id*. at p. 779 (discharged because she failed to return for treatment).

**Medical opinion evidence indicates that Ms. Roland could work within the limits found by the ALJ**. Agency mental health experts reviewed the medical evidence and opined that Ms. Roland could perform unskilled work; that is, work she could work "where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little judgment; [and] supervision required is simple, direct, and concrete."[70] The ALJ adopted those limitations in determining Ms. Roland's ability to work. A reasonable mind would accept the agency opinion evidence as adequate to support the ALJ's decision.

**Vocational evidence supports the decision**. The ALJ asked a vocational expert about available work.[71] The vocational expert identified representative work.[72] The vocational evidence shows works existed that Ms. Roland could perform regardless of whether such work exists where she lives, whether a job vacancy exists, or whether she would be hired if she applied for work.[73] A reasonable mind would accept the vocational evidence as adequate to show work exists that Ms. Roland can do.

---

[70]*Id*. at p. 338. *See id*. at p. 367.

[71]*Id*. at p. 87.

[72]*Id*. at p. 88.

[73]42 U.S.C. § 1382c(a)(3)(B) (defining disabled under social security law).

**Conclusion and Recommendation**

Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the undersigned magistrate judge recommends DENYING Ms. Roland's request for relief (docket entry # 2) and AFFIRMING the Commissioner's decision.

Dated this 30th day of October, 2014.

_____
UNITED STATES MAGISTRATE JUDGE